M. Garner by settlement before marriage reciting that his intended wife was entitled (amongst other property) to certain negro slaves named in the deed, agreed that A. Evans, and W. C. Snipes, should be trustees; and hold the said negroes, on the following trusts; to permit Mm to work and employ the said negroes and receive their profits and earnings, to his own use, during tk term of his intended wife’s natural Míe; and from ami after her death (in case she should tlu;« be living) to per *442 mit and suffer her, to take the earnings of said negroes to her own use during her life; and after her death in trust, to deliver up said negroes to the heirs of the body of said intended wife.*
The marriage took effect, and M. Garner is since dead, leaving his wife alive, and several children, who are complainants with her. His executors sold the whole estate, including the said negroes. The widow bought all the negroes (except three purchased by P. Weston) and gave her bond to the executors. This suit is to establish the marriage settlement, and to he relieved from the payment of the bonds. The executor in his answer admits the facts stated in the bill, but says he has assigned the bonds to the creditors of Mr. Garner, and has no control over them. P. Weston one of the defendants, answers that two of the negroes he purchased were mortgaged to Mm to secure a debt by Mr. Garner, in 1787; and he was ignorant of the settlement, which had not been recorded, according to law, and therefore is void as to him. But lie knew of the settlement at the time of the sale. Blake and Gregory (other defendants) say they were bona fide creditors of Mr. Garner, and had judgment and execution against him; and the bonds were assigned to them by the executor: And that they arc purchasers for valuable consideration, without notice of the settlement which was not recorded.
There are three questions, in this case. 1st. Whether the settlement not being recorded within the limited time, is not void as to creditors. 2d. What estate M. Garner took in the negro slaves under the settlement, whether an absolute estate or for life. 3d. If his creditors purchasing for valuable consideration without notice of tlie. settlement are affected by it.
The first point has been determined in a case in this court, by which it was decided, that the penalties of the act which was very badly penned, did not extend to set ilements made prior to tlie passing the act. In consc - *443 quenee of that derision, the legislature, by an act in 1792, extended the time of recording old marriage settlements, and this settlement lias been recorded within the extend- d time: Indeed before the passing of the act extending the time. This settlement therefore is not a void hut a valid deed.
2d. It is contended for the creditors, that if this had been a settlement of real estate, Mr. Garner would have taken an estate tail under it, but being of personal estate, the absolute property vested in him, and became liable, to bis debts. Many cases were produced — They, relate, chiefly to trusts, under last wills; which are different from marriage settlements. 1st. Because these last are upon valuable consideration. 2d. They are, to be carried into execution, e\ on against parents. 3d. Were they to put the children completely in the, power of the parents, there would be no object at all in the marriage, settlements. Marriage, is the highest consideration; provision for the issue, is the. immediate object of settlements, and is intended as an effectual provision. The issue are purchasers for a valuable, consideration. In most of the cases cited, (except Jones vs. —--, 1 Eq. Cas. 392. 3 P. Wms. 359,) the. estate moved from the husband; hero from the, wife, and was only part of her property: the rest not settled. See the following cases—1 P. Wms. 132. 3 P. Wms. 32, Webb vs. Webb. 2 Vern. 43, 195, Peacock vs. Spooner. 2 Ves. 237, 646, 660, Garth vs. Baldwin.
The deed as it now stands is nonsensical (her death for his death.) It appears to have been originally drawn correctly; but it was altered by Mr. Garner, before the marriage, and if allowed to stand in that shape, would defeat the. provision for the wife,. If not corrected, the deed is inoperative as to the wife. It could not be the intent of the parties to make a settlement on the wife, of her own estate, from which she should derive no benefit. The court corrects errors and mistakes.- — It is its duty to do so. It must be done in this case, and the deed made to speak its original language (i. e.) to give the husband a life estate, with limitation to the wife for life: Then trustees to hold the negroes for the use of the, chil *444 dren. The intent is plain. The trust is executed as to the husband and wife; executory as to the children. The act to be done by the trustees was to deliver them to the children of the wife. This shews clearly that the hus-. band and wife were to have only an usufructuary interest, and the property to he absolutely secured to the children. The court is of opinion that Mclcher Garner took an estate for life with remainder to the wife for life: and the limitation over to the heirs of the body of the wife, will rest the property in them at her death. All the property being originally the wife’s, and this being a case of marriage settlement, makes it a strong case in favour of the children, who are deemed purchasers for valuable consideration. And cases of marriage settlements are different from estates at law, or mere trust estates, which follow the law.
3d. Point. This case is so singular, that it is governed rather by its peculiar circumstances than by general rules. It is good law that if a person interested in an estate, suffer a disposal of it without notice of his claim io purchasers, the court will protect the purchaser; and where the trustee sells the estate without notice of the trust, the court will give cestui que trust relief only against the trustee. But there are no cases where the court refuses relief to persons ignorant of their rights; if they prosecute their claims soon after they became acquainted with them. In this case the cestui que trust applied to counsel soon after her husband’s death for advice on the settlement, and was told that not being recorded according to law, it was void. The executor of M. Garner also received same advice from counsel. In consequence the property included in the settlement was sold as part of his property. The question as to the validity of the settlements in that predicament was decided in 1792,18 months after the sale in this case, in the cause of Lenox vs. Gibbes. The complainant then became apprised of her rights, and instituted suit, but her bonds had been previously assigned to the creditors of her deceased husband, instead of Ins bonds which were given up to the executor. This is unlike all the cases cited. Mr. Garner mortgaged *445 two of the negroes to P. Weston. There is no proof that this was done with the consent or privity of the tras-tees or complainants. P. Weston acknowledges that he knew of the settlement before the sale, therefore he is not a purchaser without notice. The court is of opinion that there was no such fraud, concealment or negligence of complainant, as should operate to her disadvantage. She and the executor acted under professional advice, on a point not then legally adjudicated, and which proved to he erroneous. Decreed that the bonds of Ann Garner the complainant be given up to her ant! cancelled, and that the mortgage to P. Weston being void, the negroes shall go to complainant. Executor to apply other funds of Melcher Garner, if any, to protect creditors, to whom he had assigned Ann Garner’s bond, so far as the same were given for property comprehended in the. settlement. What she bought in, really the property of her husband’s estate must be paid for. P. Weston to pay for the use of the negroes, and deducting taxes.
Costs to be paid out of M. Garner’s estate.

 The absurdity of the’ivording of the deed arose from some though* ■ (ess alterations of the deed, by M. Garner, after the deed ivas draivi:, The errors were corrected by the court